# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE A. HELLRUNG, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-07-419-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Michelle A. Hellrung requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

**Claimant's Background**

The claimant was born on January 28, 1981, and was twenty-five years old at the time of the administrative hearing. She had an eleventh grade education and previously worked as a small product assembler, hospital cleaner, and kitchen helper. She alleges she has been unable to work since September 21, 2004, because of depression.

**Procedural History**

On February 11, 2005, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Michael Kirkpatrick conducted a hearing and determined that the claimant was not disabled on March 9, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that the claimant retained the physical residual functional capacity ("RFC") to perform work at all exertional levels. She had the mental RFC "to understand, remember, and carry out simple, routine unskilled tasks (but not detailed or complex tasks)." (Tr. 18). The ALJ

concluded that the claimant was not disabled because she could perform her past relevant work as a small product assembler, hospital cleaner, and kitchen helper (Tr. 24).

**Review**

The claimant's sole contention is that the ALJ erred by failing to properly evaluate the medical evidence. She specifically argues that the ALJ failed to discuss those portions of the consulting psychologist's examination that supported her claim for disability. The Court finds this contention dispositive.

The record reveals that the claimant received mental health treatment at Carl Albert Indian Health Services for major depression beginning in December 2002 and continuing through at least September 2006. The claimant was diagnosed with major depression, prescribed medication, and noted to have social and environmental problems (Tr. 196-97, 211-14, 216-18, 221, 225, 238-39, 243, 245, 257, 262, 265, 275-76, 284, 289, 293, 298, 309-13, 317, 332-33, 336-38, 344-48). In May 2005, the claimant underwent a mental status examination with consulting psychologist Dr. Annette Miles, Ph.D. The claimant complained that she had suffered from depression nearly her entire life. She reported feeling fatigued even though she slept eleven to twelve hours per night and of concentration and memory problems. The claimant denied current suicidal ideation but reported that she constantly worried and experienced some obsessive-compulsive behavior. Examination of the claimant indicated that she "was oriented to person, place, time and purpose" and "was in touch with reality." She was able to repeat five digits forward and three digits backward, knew her date of birth and address, and could recall two out of three words after five minutes.

She performed single-digit calculations except for division and was unable to subtract 7s from 100 but could spell "world" backwards. Dr. Miles estimated the claimant's IQ was greater than 80. She assessed the claimant with major depression (recurrent and moderate), early onset dysthymic disorder, sexually abused as a child, alcohol and polysubstance dependence in remission by claimant's report, generalized anxiety disorder needed to be ruled out, unemployment, and a current Global Assessment of Functioning ("GAF") score of 50. Dr. Miles did not expect the claimant's condition to improve significantly within the next twelve months "due to the length of disturbance." When assessing the claimant's ability to do work-related mental activities, Dr. Miles determined the claimant "[was] able to understand and remember [but] [h]er ability to sustain concentration, persist, socially interact and adapt to work situations [was] compromised by her long-standing depressive disorder." She believed the claimant was "honest in providing information." (Tr. 152-55).

Non-examining agency psychologist Dr. Tom Shadid, Ph.D., reviewed the record and completed a Psychiatric Review Technique ("PRT") form and a mental RFC assessment in June 2005. On the PRT form, he evaluated the claimant for affective disorders and determined she was mildly limited in restrictions of activities of daily living and difficulties maintaining social functioning and moderately limited in difficulties maintaining concentration, persistence or pace. There were no episodes of decompensation of an extended duration (Tr. 156-69). On the mental RFC assessment, Dr. Shadid concluded the claimant had moderate restrictions in her ability to understand, remember and carry out detailed instructions. He noted the claimant "[was] able to understand, remember and carry

out simple but not detailed instructions under routine supervision. Attention and concentration are diminished, but are adequate to complete simple tasks. Can relate effectively to the general public, and could relate to coworkers and supervisors in superficial manner, not requiring close supervision." (Tr. 170-73). Non-examining agency psychiatrist Sally Varghese, M.D., affirmed Dr. Shadid's conclusions in October 2005 (Tr. 191).

The ALJ determined the claimant's depression was a severe impairment (Tr. 17). He discussed treatment records related to the claimant's depression from Carl Albert Indian Health Services (Tr. 17, 20-21), the mental evaluation by consulting psychologist Dr. Miles (Tr. 17, 22), and the assessments by the non-examining agency psychologist and psychiatrist (Tr. 18). The ALJ then concluded that the claimant had the mental RFC "to understand, remember, and carry out simple, routine unskilled tasks (but not detailed or complex tasks)." (Tr. 18).

However, the ALJ failed to mention the GAF score of 50 assigned by Dr. Miles and several of her other findings, *e. g.*, Dr. Miles did not expect the claimant's condition to improve significantly within the next twelve months "due to the length of disturbance[,]" and the claimant's "ability to sustain concentration, persist, socially interact and adapt to work situations [was] compromised by her long-standing depressive disorder." (Tr. 152-55).[2] "Although the GAF rating may indicate problems that do not necessarily relate to the ability

---

[2] "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion].

to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947. The ALJ should have considered such a low GAF score and whether it was due to occupational factors. *See*, *e. g.*, *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Further, neither the non-examining psychologist nor the psychiatrist made any reference to the claimant's GAF score in the notes or comments on the PRT form or mental RFC assessment form making it unclear whether they considered the low GAF score when reaching their conclusions. *See, e. g., Lee*, 117 Fed. Appx. at 678 (finding discussion of a GAF score relevant and noting that the ALJ "reli[ed] . . . wholesale upon a [PRT] form completed by the [non-examining agency physician]" who made no mention on the PRT form of the GAF score assessed by the consulting physician).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to rely only upon the evidence that supported a

finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 18th day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**